Good morning, everyone. Welcome to the Ninth Circuit. It's nice to see all of you here today. Judge Miller and I would like to extend a special welcome to Judge Rostein, who is sitting with us by designation from still, I guess, the Western District of Washington, right? But we are very lucky to have her with us, and we are especially grateful that you're willing to take on this extra work. Glad to be here. All right, we will hear the cases in the order that they appear on the calendar. And the first case has been submitted on the brief, so we'll move directly to the second case, which is Barnes v. Chase Home Finance. And if counsel, for that case, are ready to proceed. Thank you, Your Honor. May it please the Court, my name is Elizabeth Weinstein of Yarmouth LLP. I appear on behalf of Mr. Barnes, and I'd like to reserve three minutes for rebuttal. Thank you. Mr. Barnes has lived in his home for almost 30 years. He purchased the home with his then-wife in 1990, and 17 years later, he applied for, filed for marriage dissolution. At that time, the court that was presiding over the marriage dissolution awarded him the family home. And with the contingency that he take out a loan, that court termed a refinance loan, to take his ex-wife's name off the mortgage deed and to pay his ex-wife a property division judgment. That loan is the subject of this appeal because the district court erred in finding that that was a residential mortgage transaction, not afforded a right of rescission by TILA. The reason for the district court's error was that they failed to take account of the Oregon state law that provides that at the time of Because of that joint ownership, Mr. Barnes was an owner of the home. The loan was to fund his buyout of his ex-wife's interest in that property, and that's a circumstance specifically provided for in the TILA regs. It is not a residential mortgage transaction per those regs. Can I ask, before you get further into that, does your position rest entirely on that provision of Oregon law? Which is to say, if you didn't have that and you just had, you know, he owned it and then he transferred it to his wife, would that prior ownership by him be enough in your view? Thank you for that, Your Honor. The applicability of the Oregon state law is that it negates the 2003 quit claim, which the district court focused on. But taking Your Honor's question, the, and I'll also say as an aside, the Oregon Supreme Court specifically contemplated such ideas as one party to a marriage taking title of a piece of property and then, and what would happen at the time of property division, that those sorts of arrangements between a marriage would be negated at the time of property division. But taking Your answer is yes to his question. No, excuse me, as an aside. Even taking aside the Oregon state law, it's helpful to look to the language of the residential mortgage transaction provision of TILA and the purpose of TILA. TILA, as we all know, it's a consumer protection law and yet Congress understood that certain borrowers are vulnerable to predatory lending practices and others may not be so. A residential mortgage transaction is a carve-out for the sorts of borrowers who are not vulnerable to predatory lending practices. The language of the statute is, it affects, or it applies to borrowers who are acquiring or taking out a loan to initial, for the initial construction of a home. Those are not thought to be vulnerable. And in fact, the statute puts the word initial in front of the construction part, not in the loan. That's correct. And in a case, this Court has not considered this issue per se, but a case that I cited in the briefing out of the Eastern District of Pennsylvania goes into the legislative history and makes clear that Congress contemplated certain types of loans, such as a home repair loan, being the sort of a loan where predatory practices are prevalent and that sort of a borrower is vulnerable. Here, if we look to Mr. Barnes, it's clear which camp he falls into. He was not a buyer who was shopping for a new home, who went to a bank to take out a mortgage to buy a new home at his leisure, at his discretion. He is akin to a borrower for a home repair loan in which a bad thing, a circumstance has happened to a home and a person under pressure needs to take out a loan. He was court ordered to take out this loan. Just to be clear, your answer is yes, that even without the Oregon law, you think the was it in 2000, prior to 2003, he had had title and now he's reacquiring it. That's enough to take this? Yes, your honor. He, he clearly falls into the camp of a vulnerable buyer who is being forced by circumstances outside of his control to take out this loan at a time, not of his choosing. And how do you, how do you get that out of the text of, I mean, it says acquisition or purchase. You know, he's again, setting aside the Oregon law for a moment. You know, he had title, he quit claimed it to his wife and now he's getting it back. So he's going from having no ownership interest to acquiring an interest. Why isn't that an acquisition? I would argue, your honor, that acquisition implies the initial purchase, even though that term initial is not part of it. He, the statute seems to mean a buyer who has the liberty or has an interest in buying a new home, goes out to take out a loan and does so, um, as opposed to a buyer under duress who is, um, who is forced to take out a loan due to circumstances outside of, outside of his control. I mean, suppose, I mean, to, to sort of take it even further from the facts of this case, imagine a hypothetical where he has a house in Independence, Oregon, and he gets offered a job in New York city. And so he sells his house and moves to New York. And then 10 years later he says, you know, I really miss Oregon. I want to go back home. Um, and luckily his old house just happens to be on the market. So he buys it, um, and comes back is the loan that he takes out when he buys the house the second time. Is that a residential mortgage transaction? I would, I, I think that's a harder case to make. Um, I understand your Honor's proposition that in both cases he had been a prior owner and now he is not an owner. The difference between the two circumstances is this notion of duress. The, the, um, it's outside of his control whether he was taking out this loan in order to keep his home that he had lived in, that he had consistently lived in during the period. And so I, I grant your Honor, that is a harder case. I don't know if that is here. It seems clear that the language should, um, should apply to him, that he is the sort of person that Tila is trying to protect, that Congress was contemplating someone like him. And I'll add that the, in effect the proof is in the pudding. He does claim that he was subject to predatory practices. He didn't have a lot of options at this moment in his life when he was taking out the loan. Let me ask you, when you're dealing with title on land, um, we usually have somebody have title or they don't have title. You're not suggesting that this would depend on the factual circumstances as to whether they're duress or predatory practices, that that would in fact change whether the person owned the land or didn't own the land? No, your Honor. I'm not suggesting that. I'm, I'm trying to make a point as to what the purpose of Tila is and why this is a vulnerable buyer who is within the definition or actually in this case without, outside of the definition of a residential mortgage transaction. Um, again, I, I know the panel's not interested in the Oregon law. The Oregon law would... Oh, no, no, actually, I'm very interested in the Oregon law. So once you're done with this, I'd love for you to shift to that point. Um, the Oregon law does make clear what the, um, how title, you know, whether or not title creates ownership interest during the time of marriage. At the time of dissolution, we have a different, uh, law of the land. But, um, no, I'm not suggesting it's, it, these, um, that the title is inviolable. Your Honor? No, I would love to hear about the Oregon statute. More about the Oregon law. I think that's your stronger point, frankly. I don't, I'm not persuaded on the dialogue you just had with Judge Miller, but I'd love to hear your view on this Oregon statute. So the Oregon Supreme Court has some helpful jurisprudence for us here. Um, in fact, the, the purpose, as the Oregon Supreme Court has made clear, the purpose of this law being on the books is to, um, is to minimize the effect of title during, um, during the property division process. And that, that's from the Engle case. In the Nave versus, uh, Department of Human Services case, the court goes on to say the purpose is to, um, to prevent adverse legal effects at the time of property division. Excuse me. Thank you. At the time of property division, in that case, there was an adverse tax effect, um, due to one of the parties to the marriage dissolution taking ownership of the property at the time of a dissolution. Here, the same theory applies. Um, Mr. Barnes is protected by this Oregon law as the Oregon State Legislature intended. Um, he's protected by having a right to rescission, by the fact that he's a joint owner at the time of that property division, regardless of any quick claiming that took place during the marriage. Um, the, the appellees, um, proposed that it would be too onerous for state law to be applied in this federal statutory context. And I point this court, as I did in the briefing, to the specific reference in TILA of, um, the application of state law to undefined terms. It's not too onerous. And, and with respect to other, um, state property laws being applied in federal statutory context, that happens all the time in bankruptcy context and tax context. Um, so it is in no way too onerous to be applying this state law, very clear state law, um, into this, into this provision of TILA. And with respect to the appellee's argument that there might be some undue burden on the lenders themselves to have to look into state laws, I would propose that, um, a standard due diligence process would take this into account necessarily. And in fact, in this case, the appellees, um, the documents of the closing, the closing documents show that appellees did know that this was part and parcel of a marriage dissolution process, that part of the money of the loan made to Mr. Barnes was going to fund a property division judgment. And so there's no mystery here as to who, uh, the state of, of the property at the time. Could you address the, the, I mean, if we're looking at the same statute, this is 105.107. Yes. Yeah. And, and, um, there's an introductory clause in determining the division of property under this paragraph, the following definitions apply. And so, um, I mean, it seems one, the most natural reading of that seems to me that that's a statute that governs, you know, how the divorce court is to divide up property and it's not, shouldn't be applied to determine the rights of third parties. What's your answer to that? My answer to that, your honor, is that even the Supreme court, Oregon Supreme court cases cited show that there is an intention for this law to be applied outside of, um, strictly the dissolution process. I'd also make an aside. This is a dissolution process. So we're, we're there, we're in marriage dissolution, but this notion that, um, that the tax, there's a tax burden on one of the parties in the neighbors, his department of human services case takes that statute right out of, um, marriage dissolution and into tax law. That's just what we're doing here. We're taking it and applying it to Tila in just the same way. Do you happen to know, um, the, one of those Oregon Supreme court cases, I think you cited, um, basically, um, a hopeful prediction that for federal tax purposes, this statute would kind of solve the problem. And so the, whichever spouse is going to take the hit would otherwise take the hit is not going to, do you know, is that how the federal government has treated, um, uh, these sorts of Oregon, uh, property, uh, um, divisions? It's a great question on her that I apologize. I don't have the answer to, I haven't looked into that. Um, I'll pivot briefly then. Um, actually my time is about up. I will reserve the rest. Thank you. I was going to pivot to, um, my appellee's argument that, um, this court should reorder the rescission process, um, to consider, uh, my client's ability to tender before rendering the decision of rescission. But I, I'll wait and do that on rebuttal if your honors would prefer. Thank you. Good morning. May it please the court. Kevin Kono for defendants Chase Home Finance and Chase Bank USA. TILA does not draw the distinctions that plaintiff's counsel is arguing with respect to residential mortgage transactions. The distinction TILA draws is between financing the acquisition of the property via title or not financing the acquisition via title. Title is the key. Now this case is about a borrower who for strategic reasons had divested himself of all right, title, and interest in the property years before this transaction. Then he took out this loan and borrowed money from Chase to finance the acquisition of title. There is no right to rescission under TILA under these circumstances. Here, Mr. Barnes took out a loan to finance a $100,000 payment, uh, to acquire a statutory warranty deed, giving him title to the property. That's not a refinance because he started without title and he ended with, with title. That's a residential mortgage transaction that is exempt from TILA's rescission requirements. Well, that, that of course assumes that this Oregon statute, um, doesn't have any play in this context. And I guess I'm, I'm not sure why would we assume that? Well, first of all, the Oregon statute doesn't talk about title at all. And we look at the staff interpretation of the meaning of acquisition. Uh, it focuses on the idea of title, uh, or not. Um, so first the Oregon statute doesn't address title. Um, second, and if we want to step back and kind of walk through the whole statutory scheme, it's important to remember that Oregon is a separate property state, not a community property state. So And, and that's important because if Oregon were a community property state, then what? Well, I think there are cases out there that, that talk about the spouse having an existing interest and I don't know the law of other states and community property and how that impacts title. If that community property right rises to a level of some sort of title interest, then that might be important. I bet that's not right. I bet it, what it means is that regardless of whose name title is held, the other spouse is deemed to have a 50% interest in the property, right? Uh, sure. I, I practice in a community state. The reason I paused you there is because I view this statute as, um, essentially conferring on the non-title holding spouse, the same kind of community property interest that would exist in a community property state as of the date that the petition for dissolution is filed. It seems to me that's exactly the intent of this statute. And so if, if I think you're wrong in the community property context, you try to say, well, this is a separate property state, but I think unfortunately for you, this statute actually kind of converts whatever the marital assets are, regardless of whose name a title might be held in into assets of the marital community. So I don't think it quite does that. And I think the neigh versus Department of Human Services case from the Oregon Supreme Court is very helpful to explain more specifically how this statute works. So it starts with the proposition that Oregon is a separate property state, not a community property state. So before dissolution proceeding, there is no, um, the spouse holds no right in property titled in the other spouse's name. Then it walks through and it looks at the application of this species of co-ownership interest. And it explains, as counsel alluded to, the purpose of it is actually very specific. Both neigh and the Engel case talk about this and it is simply to respond to, and this is set forth more fully in the Engel case, to respond to a then existing court of appeals opinion that had tax consequences. And so the legislature added this species of co-ownership language for the very specific purpose of making the transfer hopefully a non-taxable transfer under federal law. But the neigh case walks through and talks about when this species of co-ownership concept arises. And it only arises if the court chooses to make a particular disposition in its dissolution judgment. We're talking about a statute here that is about what can go in a dissolution judgment and then making a property division that is just and proper under all the circumstances. And what, um, what, uh, the neigh case says is that, in short, the statutory provision relied on by the state, which is . . . Are you reading from? I'm sorry, I'm reading from the neigh case, which is 360 or 668 . . . Do you have the P3rd site? Yes, I do. The P3rd site is 385 . . . No, no, I'm, what page, I have the P3rd . . . Oh, I'm sorry. What page are you reading from? 1013. 1013? Great, okay. Go ahead, I'm sorry. And actually starts at 1012 into 1013. Okay. Um, if property acquired during the marriage is held in one spouse's name and the presumption of equal contribution is not rebutted, and if the trial court awards that property to the other spouse, then the property is treated as being held in a species of co-ownership and the award is considered a division of jointly owned property. But that's what happened here. That is what happened here. So how does that help you? Well, because TILA focuses on title. Okay? That's, that's how you, how you acquire property is through title. Okay? There's not a single case that the plaintiff has pointed this court to in which there was a TILA rescission right that, in residential mortgage transaction case that didn't involve the question of title. Well, so do you know what the rule is in community property states? I don't know what the rule is in other states because we're dealing with Oregon as a separate property state. Right. But, okay. Well, I'm just, I'm quite skeptical that you're correct, um, that this formal whole, you know, who's, uh, who's, uh, in whose name is title held is controlling for TILA purposes. I doubt that's true in community property states. Well, I can tell you that the plaintiff hasn't pointed you to any authority that supports that, that position, um, in its court. That's why I'm just surprised that you don't have authority that says, you know, in this other context, maybe it's different, but here, this is why it's so critical that this is a separate property state. Right. Well, because we focused on the very specific and unique body of law for Oregon and marital dissolution proceedings. And I think the Ney case is one case that shows that it's, it's really intended to have a much narrower purpose. And there is no case that, you know, counsel said that the Oregon Supreme Court has said that these concepts apply outside of dissolution proceedings and there is no such case. The tax, the tax context is, it's a third party, just like, uh, just like you guys are, isn't it? It creates, um, a concept of division of property and that is within the statutory proceeding. And then the federal government will do what it does with respect to taxes on that. So if... You know what the federal government does? I don't, I don't know the answer to that, that question either. Um, I think our argument is, look, acquisition depends on title because there is no other way to tell who has title to the property and it gets to the, your question Judge Rothstein, is how do you judge, uh, who holds an interest in, in Oregon if it's not title? How, how is... All you're being asked to do is send, well, remind me, I'm not as familiar with the statute as you are, but you're, it's not a burden on you if you just make the assumption that, you know, both of these people are deemed to owners. It's not that onerous, is it? Well, and, and here the notice of right to cancel was given and the staff interpreted... That's what I mean. So I, I mean, you, you made the argument in your brief and I, I think it's a good argument that, well, my goodness, if you recognize this, uh, sort of unrecorded interest in property, how in the world are we going to know all these other... And I guessed my, my, my, what my, what I was thinking when I read that is that that's true, but here what you would do, I assume, is just say, okay, look, we're in Oregon, just like if we were in California, it's a community property state. We're just going to assume that both spouses are, have some kind of an ownership interest, right? We'll just err on the side of caution and you just give the notice. That can be done for purposes of giving the notice, but it doesn't create a statutory right where none exists. No, no, no. I, I, what we're, what we're trying to figure out is whether that right exists. Part of your argument is that please don't recognize it because it will be so onerous, uh, you know, it'd be such an onerous burden on, on us as lenders. And I just think the response is no, just err on the side of caution like you did here. It's not going to break the bank, so to speak, right? If you have to do that. I mean, I'm sorry, but that's, isn't that the response that this isn't going to wreak havoc on, on lenders nationwide if we recognize this interest? But then we may end up in a circumstance like this where there is no underlying right. The notice was given in abundance of caution and now we're in litigation years later over the existence of the underlying right. And I'm not, I'm not, I'm certainly, I'm, you're right that just because you gave the notice doesn't control. I recognize that. I'm just saying that it seems to me we could hold here that in Oregon, once the petition for dissolution is filed, the, both, both spouses are imbued with this kind of co-ownership interest. And at that point you all are obligated to give the notice. That's it. That's all. But how is a lender supposed to know whether a dissolution judgment has been, uh, You won't. So you just give, that's what I'm saying. You just give the notice. Just like if you, because again, I bet if you talk to your folks who do deal with the, this in California, I bet they say, don't focus on who holds title. Just assume that both spouses have a 50% interest in the property. So just like in California, you just didn't hear, Hey, we're in Oregon and because we don't know when this petition for dissolution is filed, we better just err on the side of caution and issue the notice. But how is the lender to know at all whether one's been filed? That rule would, that abundance of caution approach would mean in every residential mortgage transaction, even though there's no right to rescind, that lenders should be giving all of these disclosures and a notice of right to cancel on the possibility that some dissolution proceeding has been filed. That would, that would change the whole fabric of, of residential mortgage transaction lending in Oregon. It would, it would create this notion in borrower's minds that they have rights that they don't have. It would arguably create contractual rights when you give a right that exists under the statute. I think the law is pretty clear that you have the better of the argument on that point. Just because you give an unnecessary notice doesn't somehow. And maybe I'm misunderstanding your, what you're postulating here is the idea that lenders should just give these disclosures no matter what on the, on the possibility that there's a dissolution proceeding that's been filed. And my response is that would then require a lender in every transaction to give a notice of right to rescind. Right? And so if that's the case, then you're imposing on lenders other obligations, not only just to make the disclosures, but you're creating in the borrowers an argument that they have some contractual right to rescind three days after loan consummation because they've been given this document that says you have a right to rescind within three days, even though it doesn't exist. And, and so that rule seems to me to impose an incredible burden on the, on the lenders. Could, could you solve that problem just by asking the, the prospective borrower, hey, are you into forced proceedings, pal? That might, might be one, one approach. But again, I think we're creating another body of law here when Congress has spoken and the Federal Reserve Board and the CFPB have spoken. This is what a residential mortgage transaction is. It's when you take out a loan to finance the acquisition of the property. And again, the staff interpretation is entitled to great deference and it doesn't give any inkling that the notion of these potential co-ownership rights would fall within the scope of acquisition. It talks about full legal title. That's, that's the reference to ownership interests in the staff interpretation that we cited. And you're referring to the comment number five in the staff interpretation? Yes. Could you address, you I think made the argument in your brief that that refers to a situation in which the consumer had previously purchased the interest, which I take it your position would be even if there is a species of co-ownership, that wasn't something that he purchased. That's correct. It's, it has to be both purchased and acquired. And again, that's in the staff interpretation that's entitled to deference. And so that's another point that we made in the brief is this co-ownership interest is not purchased. We cited cases that apply that staff interpretation to say it's a residential, it doesn't take it out of residential mortgage transaction, even if you have an interest, if it's not both purchased and acquired. And so this marital asset interest, this co-ownership interest still falls outside of that exception because it wasn't, it wasn't purchased. It arises by operation of the statute if it arises at all. And more specifically, it arises under the statute and only if the court makes a particular property division. So again, under that regulation, it's, it falls outside the scope of the exception. Thank you. Okay. Thank you very much. Okay. Very good. We, you have a little bit of time left. Oh, did you, you, you all need to, just for future purposes, if you intend to split your, oh, did you put 12? Is this the case? Oh, my fault. Okay. Very good. You have three minutes then. Sorry. Good morning, Your Honor. Please the Court. Lance Olson on behalf of Federal National Mortgage Association, known as Fannie Mae, and IBM Lender Process Servicers, now known as Soteris. And I just have a brief discussion this morning about what could be, I guess, a caboose issue here. First, Fannie Mae and Soteris do join in Chase's arguments regarding the ineligibility of rescission and the claims made there. But what I want to talk about briefly is, to the extent that there's a suggestion of damages against Fannie Mae for violations of 1640 or 1635 under 1640, those claims are time barred. Under 1640E, any action for failure to comply with any requirement of 15 U.S.C. 1635 must be brought within one year of the date of the alleged violation. If you look at the chronology in this matter, you will see that the alleged violations began in October of 2010. October 23, 2010, is the latest date that you can provide for a notice of intent to rescind. And Fannie Mae was not added to this litigation until November 26, 2011. So regardless of where we go with the rescission, any damage claim would be precluded against Fannie Mae. Remind me, did this issue come up in the first appeal? Well, it was raised, but it hasn't been addressed. No court has seized on this, because obviously if we don't get to a violation, we don't get to the discussion of damages. And so to the extent that I think that's also been suggested in the reply is that this has already been discussed, and it hasn't because we haven't got to damages. But I thought her response was that you all did try to get out of this case. I couldn't remember if it was on this ground or a different ground. And our court kind of, in a footnote, sort of shut you guys down. Well, what the court was focused on was there was a confusion as far as the identity of how Ceteris and Fannie Mae related and how the ownership and creditor. I don't believe that from my reading, the court did not get to the specific issue of whether or not any damage claim was barred by statute of limitations. I don't think it can get there in theory until, or it didn't feel the need to get there until it determined whether or not there actually had been a violation. And my point today is to say it doesn't matter whether there's been a violation, because even if there has been, there's no damage claim that can survive the strict reading of 1640E. With respect to Ceteris, they're not a creditor. They are a loan servicer. They're not covered under this provision. So again, damages against a party that is not defined as one against whom damages can be sought wouldn't be appropriate, regardless of how the discussion of the rescission comes off. Okay. Thank you. Very good. Thank you. Sorry. All right. I just, I forgot that this was the case. So very good. So you've got two minutes and 44 seconds for rebuttal. Thank you, Your Honors. To address my colleague's point regarding the statute of limitations, excuse me, another date to consider is that Mr. Barnes was not notified of the assignment of this loan until January of 2011. So this notion, and in fact, although the violation occurred, as counsel said, October 23rd, 2010, Fannie Mae wasn't assigned the loan until almost a month after that. So the statute of limitations issue is clouded by when Fannie Mae actually took ownership of the loan and when Mr. Barnes was notified of that. He couldn't have added them to the lawsuit until he knew that they were involved. One additional point with respect to the conversation Judge Miller was having regarding the statutory language about purchasing and acquiring, the, that regulation, I should say regulatory language, the regulation notes had previously purchased and acquired interest. Here Mr. Barnes did previously purchase and acquire. The cases that were cited by appellees involved inherited property in which borrowers had not ever purchased interest. Well, isn't it pretty clear what they mean is purchased and acquired and still had some purchase and acquired at some point and then totally gave it away by quick claim deed? I'm not sure that the cases make that distinction and I'm not sure why TILA needs to make that distinction with respect to a person in this situation where he's involved in a dissolution of a marriage and has resided in the property and has contributed to the property the entire time. I understand there was a quick claim and I understand that that has a legal effect um and and of course we have the whole other argument of the Oregon law and the time of the property division but even notwithstanding that law here he behaved as an owner the entire time. How do we know that? How do we know, I mean she got the property, he quick claimed it to her. But it was, that's correct your honor, it was their marital home. He lived in it continuously. Every aspect of their um of of his you know of his living in that home was um was the same as it had been prior to the quick claim and there's reason to that I don't I don't see a reason to read into TILA this extra textual requirement of continuous ownership throughout the time period in a circumstance like this where a borrower has um has lived in the property the case just argued is submitted.
judges: Watford, Miller, Rothstein